IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

WILLIAM M. BURKHOLDER,                    :
                                          :
            Petitioner,                   :          CIVIL NO. 3:CV-03-0007
                                          :
      v.                                  :          (Judge Vanaskie)
                                          :
WILLIAM M. WOLFE, *et al.,*                :
                                          :
            Respondents.                  :


M E M O R A N D U M

I.    **INTRODUCTION**

      Petitioner, William M. Burkholder, currently an inmate at the State Correctional

Institution at Houtzdale, Pennsylvania, initiated this action pro se in the United States District

Court for the Western District of Pennsylvania by filing a petition for writ of habeas corpus

pursuant to the provisions of 28 U.S.C. § 2254.[1]  On January 2, 2003, the case was transferred

to this Court pursuant to 28 U.S.C. § 2241(d).  The petition challenged Burkholder's conviction

and sentence, as well as adverse decisions by the Pennsylvania Board of Probation and Parole

("PBPP").[2]  As to the denial of parole, Burkholder contended that the PBPP had applied post-

---

      [1]  At the time the petition was filed, Petitioner was incarcerated at the State Correctional
Institution at Albion, Pennsylvania.

      [2]  Burkholder attacked a 1991 conviction and sentence in the Court of Common Pleas of
Franklin County, Pennsylvania, which is located in the Middle District of Pennsylvania, and also

conviction standards in violation of the <u>ex post facto</u> clause of the United States Constitution

and had violated his Fifth and Fourteenth Amendments privilege against compulsory

incrimination by requiring that he admit guilt to rape charges to which he had entered a plea of

<u>nolo contendere</u> pursuant to a plea agreement.

On initial screening, this Court dismissed the claims pertaining to Burkholder's 1991

conviction and ensuing sentence because this Court had previously determined in another

habeas proceeding brought by Burkholder, docketed to Civil Action No. 99–596, that the claims

he was seeking to advance in this action were barred under the procedural default component

of the exhaustion of state court remedies doctrine.  (Memorandum & Order of July 21, 2003,

Dkt. Entry 6, at 6-7).  The July 21st ruling directed service of the habeas petition and required

respondents to address the claims pertaining to the denial of parole.

Respondents filed an answer to the habeas petition together with a supporting

memorandum, arguing that Petitioner had failed to exhaust state court remedies on the claims

concerning the denial of parole.  Respondents reserved the right to address the substantive

merits of Burkholder's claims "upon further direction of the Court."  (Dkt. Entry 13 at 1 n.1)

The exhaustion issue was addressed by the Court in a Memorandum and Order dated

March 18, 2005.  (Dkt. Entry 30.)  Concluding that the Pennsylvania courts would not entertain

_____

contested actions taken by the Pennsylvania Board of Probation and Parole.

Burkholder's Fifth Amendment compulsory incrimination claim arising out of his refusal to acknowledge guilt for sexual assault, this Court held that the exhaustion requirement as to that claim was inapplicable.  (Id. at 10.)  As to Burkholder's ex post facto claims, the Court concluded that complicated questions of "fair presentation," procedural default and waiver arising out of Burkholder's pro se efforts to raise the matters in the state courts compelled appointment of counsel and additional briefing.[3]  (Id. at 13.)

On May 10, 2005, Respondents filed a second answer, a supporting brief, and additional exhibits.[4]  Petitioner's counsel filed a reply brief and exhibits on August 31, 2005.  The matter is fully briefed and ripe for disposition.  For the following reasons, the petition will be denied.

## II.     BACKGROUND

The information available to the PBPP showed that during 1988 and 1989 Burkholder had forced his thirteen year-old stepdaughter at knife-point to engage in sexual acts with him over a considerable period of time, culminating in her becoming pregnant.[5]  The PBPP also had

_____

[3] Frederick W. Ulrich, Esq. of the Federal Public Defender's Office for the Middle District of Pennsylvania accepted the appointment to represent Petitioner, and he did a commendable job in addressing the complex issues presented here.

[4] Amanda L. Smith, Esq. of the Attorney General's Office is likewise to be commended for her comprehensive treatment of the difficult issues presented in this matter.

[5] Interestingly, although it does not appear that Burkholder ever acknowledged that he had raped his 13 year-old stepdaughter, he did acknowledge paternity of the child's baby.  (Tr. of May 22, 1991 Sentencing at 24, attached as Exhibit C to Petitioner's Reply Brief, Dkt. Entry

information indicating that Burkholder had threatened to shoot a state police officer when law enforcement agents sought to arrest him.[6]

On March 12, 1991, Burkholder entered a plea of <u>nolo</u> <u>contendere</u> to charges of rape and aggravated assault in the Court of Common Pleas for Franklin County.  As a result of the plea, Petitioner was sentenced to 10 to 20 years in prison on the rape charge, and a consecutive prison term of 1 to 5 years on the aggravated assault charge.  The Pennsylvania Department of Corrections ("DOC") calculated his minimum expiration date to be April 17, 2001, and his maximum date to be April 17, 2015.  (Dkt. Entry 1, Attach. 3, Ex. A, Sentence Status Summary.)

At the time the petition was filed, Burkholder had been considered for and denied parole on two occasions: January 31, 2001 and May 22, 2002.  Burkholder sought review of the first of these adverse decisions by petitioning the Pennsylvania Supreme Court for leave to file original process.[7]  Burkholder raised, among other things, compulsory incrimination and <u>ex</u> <u>post</u> <u>facto</u> claims.  By Order dated July 22, 2002, the Pennsylvania Supreme Court granted the request

---

57-1.)

[6] Burkholder was shot in the leg during the course of being arrested.  He had been carrying a rifle at the time.

[7] Burkholder, proceeding <u>pro</u> <u>se</u>, captioned his Supreme Court filing as a "Petition for Writ of Habeas Corpus (Extraordinary Relief)(in the form of mandamus)."  (Dkt. Entry 42, Ex. G to Respondents' Brief.)

for leave to file original process, but denied the petition without opinion.  (Dkt. Entry 1, Att. 3, Ex. B, 1.)[8]

As to the 2002 denial of parole, Burkholder, proceeding pro se, filed a mandamus petition in the Pennsylvania Commonwealth Court, again raising compulsory incrimination and ex post facto claims.  The Commonwealth Court summarily dismissed the petition in an Order dated June 24, 2002.  .(Dkt. Entry 42, Ex. K to Respondents' Brief.)  Burkholder did not appeal this adverse ruling to the Pennsylvania Supreme Court.

After the filing of this habeas corpus proceeding, Burkholder was again considered for parole.  The PBPP once again denied parole, issuing its decision on April 7, 2004.  (Id., Ex. E.) Burkholder challenged the PBPP's latest decision by filing a Petition for Writ of Mandamus in the Commonwealth Court of Pennsylvania, asserting, among other things, that the PBPP had applied post-conviction standards in violation of the ex post facto clause and had violated his plea agreement, which did not require an admission of guilt. (Id., Ex. M.) The Commonwealth Court, on November 8, 2004, sustained the PBPP's preliminary objections and dismissed the

---

[8] The fact that Burkholder had used a petition for leave to file original process in the Commonwealth's highest court raised concerns as to whether the issue had been "fairly presented" to the state courts for exhaustion purposes.  An applicant for federal habeas corpus relief must have "fairly presented" his claims to the state courts by initiating judicial review in the appropriate state court.  Raising a claim for the first time in a petition seeking discretionary review by the state's highest court may not constitute "fair presentation" for exhaustion purposes, especially where there exists a lower court with original jurisdiction over the matter. See Castille v. Peoples, 489 U.S. 346, 351 (1989).

petition.  (Id., Ex. N.)  Burkholder filed a direct appeal with the Pennsylvania Supreme Court.

Significantly, however, Burkholder failed to perfect his appeal, and the Pennsylvania Supreme

Court, on March 29, 2005, dismissed the appeal. (Id., Ex. L.)[9]

As noted above, Burkholder presents two claims in this habeas corpus proceeding.

First, the PBPP violated his Fifth Amendment privilege against self-incrimination by requiring

him to admit guilt in a parole interview and to participate in a sex offender treatment program,

which similarly required him to admit guilt to sexual assault charges that were either dismissed

or to which he had pleaded nolo contendere. Second, the PBPP applied post-conviction

standards to his parole application in contravention of the ex post facto clause of the United

States Constitution.

As established by this Court's March 18, 2005 decision, the compulsory incrimination

claim is not subject to the exhaustion requirement, and thus will be addressed on the merits.

The ex post facto claim, however, is subject to the exhaustion requirement, and now must be

assessed in the context of the April 7, 2004 denial of parole and the state court corrective

processes pursued by Burkholder in the wake of that latest denial of parole.

---

[9] Burkholder was warned that, if he did not pay the filing fee or ask the Supreme Court for leave to appeal in forma pauperis, his appeal would be dismissed.  (Dkt. Entry 42, Ex. O.) Burkholder failed to take appropriate action, and the appeal was dismissed.

III.   **DISCUSSION**

    A.   **The Fifth Amendment Claim**

Burkholder challenges the PBPP's requirement that he admit guilt to the sexual offenses that were the subject of the Franklin County prosecution and that he participate in a sex offenders' treatment program, which includes a requirement that he admit guilt for his rape conviction.  He contends that calling upon him to acknowledge criminal responsibility violates his Fifth Amendment privilege against self-incrimination and is contrary to his <u>nolo</u> <u>contendere</u> plea.

The Fifth Amendment, made applicable to the States by the Fourteenth Amendment, provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself."  U.S. Const. amend. V.  It has been held that this right "does not terminate at the jailhouse door, but the fact of a valid conviction and the ensuing restrictions on liberty are essential to the Fifth Amendment analysis."  <u>McKune v. Lile</u>, 536 U.S. 24, 36 (2002).

In <u>McKune</u>, the plaintiff in a § 1983 action asserted that compelling him to participate in a mandatory prison sex offender program or lose certain privileges constituted compulsory incrimination in violation of the Fifth Amendment.  The Supreme Court found that the "consequences in question here – transfer to another prison cell where television sets are not placed in each inmate's cell, where exercise facilities are not readily available, and where work

7

and wage opportunities are more limited – are not ones that compel a prisoner to speak about his past crimes despite a desire to remain silent." Id. at 36.  In reaching this conclusion, the Court applied the standard used for due process violations in the prison context found in Sandin v. Conner, 515 U.S. 472, 484 (1995), and determined that "[a] prison clinical rehabilitation program, which is acknowledged to bear a rational relation to legitimate penological objective, does not violate the privilege against self-incrimination if the adverse consequences an inmate faces for not participating are related to the program objectives and do not constitute atypical and significant hardships in relation to the ordinary incidents of life." McKune, 536 U.S. at 37-38.

McKune therefore precludes, as a matter of law, a Fifth Amendment claim where only changes in the prisoner's security status and living conditions are at issue.  Seemingly, more "atypical and significant hardships" need be demonstrated before relief could be warranted. The Court in McKune did not address the question of whether the consequence of parole denial based upon an inmate's failure to participate in a sex offender treatment program violated the Fifth Amendment.

Several circuit courts, however, have concluded that sex offender treatment programs that require inmates to divulge their sexual histories do not violate the Fifth Amendment, even though failure to participate in the programs placed parole or good time credits at stake.  See

Ainsworth v. Stanley, 317 F.3d 1, 5 (1st Cir. 2002) (parole at stake and affirming district court's dismissal of claim); Searcy v. Simmons, 299 F.3d 1220, 1226 (10th Cir. 2002) (good-time credits at stake and affirming district court's grant of summary judgment in favor of defendants by finding no compulsion under the circumstances).   In Ainsworth, the court grounded its determination in three factors: (1) "parole involves relief from a penalty that has already been imposed – the full period of incarceration to which [the petitioners] were sentenced"; (2) participation in the sex offender program is not mandatory, thus affording the inmates a choice, "notwithstanding the consequences of nonparticipation"; and (3) "the denial of parole was not entirely automatic."  Ainsworth, 317 F.3d at 5.

    The First Circuit's analysis is consistent with that articulated by a unanimous Court in Ohio Adult Parole Authority v. Woodard, 523 U.S. 272 (1998).  In Woodard, a death-sentenced petitioner contended that a voluntary inmate interview as part of a clemency review offended self-incrimination principles because he could be required to provide information that would harm his post-conviction proceedings, or his refusal to answer questions could jeopardize his chances of receiving clemency.  The Court found that the clemency interview did not constitute compulsion because it was not mandatory, but instead presented the petitioner with a choice, albeit a difficult one.  Id. at 286.  The Court explained that difficult choices about whether to answer questions or remain silent are often presented in the criminal justice context without

9

running afoul of the self-incrimination privilege.  Id. at 287.  The Court thus concluded that "pressure to speak in the hope of improving [the] chance of being granted clemency does not make the interview compelled."  Id. at 288.

These considerations compel rejection of Burkholder's Fifth Amendment claim.  It is well established that "[t]here is no constitutional right or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence."  Greenholtz v. Inmates of Neb. Penal & Corr. Complex, 442 U.S. 1, 7 (1979).  While "States may under certain circumstances create liberty interests which are protected by the Due Process Clause," Sandin, 515 U.S. at 483-84, the Pennsylvania Supreme Court has long held that the denial of parole does not implicate a constitutionally protected liberty interest because parole is a discretionary matter, granted to a prisoner who has demonstrated the ability to function in society as a law-abiding citizen.  See Coady v. Vaughn, 564 Pa. 604, 770 A.2d 287 (Pa. 2001); Rogers v. Pa. Bd. of Prob. & Parole, 555 Pa. 285, 724 A.2d 319 (Pa. 1999).  Thus, Burkholder has no right to parole.

Further, whether Burkholder successfully completed a sex offender treatment program was only one factor that was to be considered in making a parole determination.  Failure to participate in a sex offenders program or to admit guilt to the charges of sexual assault did not disqualify Burkholder from parole consideration.  It may have diminished the likelihood of being

paroled, but "there is an appreciable difference between an official sanction for disobeying a direct order and a mere risk of adverse consequences stemming from a voluntary choice." McKune, 536 U.S. at 61 (Stevens, J., dissenting).  Here, Burkholder had a choice, and denial of parole is not the mandatory consequence of remaining silent.  Burkholder could admit guilt, and perhaps improve the chances for parole, or remain silent while still remaining eligible for parole consideration.  No Fifth Amendment violation flows from the choice presented to a convicted sex offender in Pennsylvania.

Burkholder maintains that he cannot be presented with this choice because he entered a plea of nolo contendere, which means that he did not concede guilt.  He asserts that it would be unfair to now call upon him to admit guilt to improve his chances for parole.

A similar argument was rejected in Wirsching v. Colorado, 360 F.3d 1191, 1204-05 (10th Cir. 2004).  The court found that whether a person has previously acknowledged or failed to acknowledge guilt to a sexual offense is irrelevant to the compulsion analysis.  Id. at 1204. Instead, corrections officials are entitled to treat a nolo plea "as it would a conviction obtained by other means – such as a guilty plea or a jury trial."  Id. at 1205.

At the time he entered his plea, Burkholder was told that a plea of nolo contendere was tantamount to a guilty plea for sentencing purposes.  (Tr. of Guilty Plea Colloquy of March 12,

1991 at 7, 11, Dkt. Entry 57, Ex. B.)  Thus, for corrections purposes, Burkholder is in the same situation as a defendant who has admitted guilt: he is a convicted sex offender.

There is a strong correlation between acceptance of responsibility and rehabilitation, and a State has a compelling interest in rehabilitation.  McKune, 536 U.S. at 47-48.  Requiring an inmate who has entered a nolo plea to admit guilt is not some "elaborate ruse to skirt the protections of the privilege against compelled self-incrimination," id. at 48, but a legitimate means of promoting rehabilitation.  By requiring Burkholder to participate in the sex offenders program, and using as an inducement the prospect of improved chances for parole, the PBPP and DOC are treating Burkholder the same as any other convicted sex offender.  This treatment does not abridge the self-incrimination privilege.  Wirsching, 360 F.3d at 1205; see also Owens v. Palmer, No. 1:06-CV-473, 2006 WL 2162192, at *4 (W.D. Mich. July 31, 2006) ("the parole board's consideration of Petitioner's remorse (or lack thereof) for the criminal sexual conduct to which he pleaded nolo contendere . . . did not violate his Fifth Amendment rights.").

There is yet another compelling reason for rejecting Burkholder's Fifth Amendment claim: the Court has held that "mere coercion does not violate the text of the Self-Incrimination Clause absent use of the compelled statements in a criminal case against the witness," Chavez v. Martinez, 538 U.S. 760, 769 (2003), and there has been no use of any statement (or of

Burkholder's silence) in any criminal case.  In Thorpe v. Grillo, 80 Fed. Appx. 215 (3d Cir. 2003), cert. denied, 542 U.S. 924 (2004), a non-precedential opinion, the Third Circuit addressed a Fifth Amendment self-incrimination challenge by a prisoner who refused to participate in a Pennsylvania DOC sex offender program required in order to receive the prison's recommendation for parole.  The prisoner refused to participate because the program required him to admit to the commission of the sex crime for which he was incarcerated.  As a result of his refusal, he was denied release on parole.  In affirming the district court's grant of summary judgment in favor of the defendants, the Third Circuit, citing Chavez, concluded that no Fifth Amendment violation occurred because the DOC policy did not require the inmate to incriminate himself in a criminal trial.  Id. at 219.  The court also found it significant that refusal to admit guilt, a condition of participating in the program, did not extend the term of incarceration imposed by the sentencing court and did not preclude consideration for parole. Id.

Thorpe, although not precedential, has been regarded as persuasive authority by District Judges in the Third Circuit.  For example, in Perry v. Vaughn, No. Civ. A. 04-CV-0934, 2005 WL 736633 at *10 (E.D. Pa. March 31, 2005), Judge Surrick, citing Thorpe, concluded that denial of parole for refusal to acknowledge responsibility for the petitioner's crimes did not infringe Fifth Amendment rights.  As in the matter sub judice, the petitioner in Perry had "not

13

demonstrated that his refusal to admit guilt . . . extended his term of incarceration or

automatically precluded him from parole consideration." Id.

In Wolfe v. Pennsylvania Department of Corrections, 334 F. Supp. 2d 762, 773 (E.D.

Pa. 2004), Judge Robreno applied the rationale articulated in Thorpe to reject a Fifth

Amendment claim indistinguishable from that presented here, explaining:

> [B]ecause the SOP Program is voluntary and the consequences of participating
> in the program, although unpleasant, do not rise to the level of constitutional
> infirmity and because the program does not compel the inmates to incriminate
> themselves in a criminal proceeding, plaintiffs' Fifth Amendment and Fourteenth
> Amendment self-incrimination claim fails.

Accord Williams v. Martinez, Civ. Action No. 06-735, 2006 WL 2588726, at *5-6 (E.D. Pa. Sept.

7, 2006).

Extant precedent convincingly runs counter to Burkholder's compulsory incrimination

claim.  According to the case law, Burkholder is faced with a choice that does not abridge the

Fifth Amendment privilege because he remains eligible for parole regardless of the choice he

makes.  Moreover, no use of any compelled statement or his silence has been made against

him in any criminal case.  Thus, the Fifth Amendment claim will be dismissed.

## B.  The Ex Post Facto Claim

Uncertainty in the state of the law when the PBPP denied parole in 2001 and 2002

prompted this Court to direct further briefing on the exhaustion question at the time it issued its

14

March 18, 2005 decision.  That uncertainty was largely removed when the PBPP denied parole in April of 2004 and Burkholder sought state court review of that decision.  The question now before this Court is whether Burkholder satisfied the exhaustion requirement as to the 2004 denial of parole.[10]

As recognized in DeFoy v. McCullough, 393 F.3d 439, 445 (3d Cir. 2005), Pennsylvania affords judicial review of a claim that denial of parole violates the ex post facto clause by way of a mandamus petition in the Commonwealth Court.  Burkholder pursued a mandamus petition following the denial of parole in 2004.

Burkholder had a right of direct appeal to the Pennsylvania Supreme Court from the Commonwealth Court's denial of his mandamus petition.  See 42 Pa. Cons. Stat. Ann. § 723; Jackson v. Vaughn, 565 Pa. 601, 603, 777 A.2d 436, 437 (2001).  It is undisputed that Burkholder failed to perfect an appeal to the Pennsylvania Supreme Court from the Commonwealth Court's dismissal of his mandamus petition.  Failure to properly take an appeal to the Supreme Court compels a conclusion that Burkholder caused his appeal to be dismissed

---

[10] Because the remedy for finding an ex post facto violation would be a directive that the PBPP conduct a new hearing, it is appropriate to limit consideration to whether the most recent decision runs afoul of this constitutional provision.  See Tucker v. Patrick, Civil Action No. 3:CV-04-1232, slip op. at 6-7 (M.D. Pa. Dec. 7, 2004).  It is also thus appropriate to determine whether the inmate properly exhausted state court remedies as to the operative parole decision.  See McCole v. Pennsylvania Bd. of Probation and Parole, Civil Action No. 04-261, 2006 WL 2792212, at *2 (W.D. Pa. Sept. 26, 2006) (finding that ex post facto challenges to earlier parole denials were moot and thus limiting review to most recent parole decision).

on procedural grounds.  Thus, his ex post facto claim was procedurally defaulted in the state

court system.  See Williams, supra, 2006 WL 2588726, at *4.

"Procedurally defaulted claims cannot be reviewed unless 'the [petitioner] can

demonstrate cause for the default and actual prejudice as a result of the alleged violation of

federal law, or demonstrate that failure to consider the claims will result in a fundamental

miscarriage of justice.'"  Id. (quoting Coleman v. Thompson, 501 U.S. 722, 750 (1991)).

Burkholder does not seek to come within either of these bases for excusing his procedural

default.  Instead, he asserts that it would have been futile to seek review by the Pennsylvania

Supreme Court because it did not recognize the viability of an ex post facto claim under the

circumstances presented here.

Failure to exhaust state court remedies may be excused on grounds of futility, but it

must be clear that state court relief is plainly foreclosed.  See Lines v. Larkins, 208 F.3d 153,

163 (3d Cir. 2000).  Contrary to Burkholder's contention, state court review of an ex post facto

challenge to the denial of parole is not plainly foreclosed by existing precedent.  Indeed, in

Cimaszewski v. Pa. Bd. of Prob. and Parole, 582 Pa. 27, 868 A.2d 416 (2005), a decision

issued before Burkholder's procedurally defective appeal was dismissed, the state's high court

held that a change in parole law that created a substantial risk of prolonging incarceration

would violate ex post facto safeguards.  Thus, Burkholder's reliance upon the futility exception

16

to the exhaustion requirement is misplaced.  See Thomas v. Pennsylvania Bd. of Prob. and Parole, No. 04-4641, 2006 WL 2789841 (3d Cir. Sept. 29, 2006) (rejecting futility claim with respect to ex post facto challenge to adverse parole decision); Parker v. Kelchner, 429 F.3d 58, 63-64 (3d Cir. 2005) (same).  Accordingly, having failed to exhaust state court remedies and having now caused state court review of the 2004 denial of parole to be foreclosed, Burkholder is not entitled to federal habeas corpus review of this claim.  Williams, supra, 2006 WL 2588726, at *5.

Even if Burkholder were entitled to consideration of this claim on its merits, he would not be entitled to relief.  Burkholder's claim is premised upon the assertion that the PBPP applied 1996 amendments to the parole statute to deny him conditional release although his conviction occurred in 1991.  Burkholder argues that the amended statute places an overriding emphasis on public safety as opposed to the prior law's command to balance safety against the offender's interests.  In support of his argument, Burkholder relies upon the Third Circuit holding that the PBPP had impermissibly given retrospective application to the amendments to 61 P.S. § 331.1 in Mickens-Thomas v. Vaughn, 321 F.3d 374, 393 (3d Cir. 2003).

In Mickens-Thomas, the court addressed a habeas petition filed by a prisoner whose life sentence had been commuted to a term of years with parole eligibility.  The petitioner claimed that he was entitled to review under the standards in place at the time of conviction, and the

PBPP could not give effect to the legislative change in policy reflected by the 1996 amendments.  The Third Circuit, reasoning that "[a]n adverse change in one's prospects for release disadvantages a prisoner just as surely as an upward change in the minimum duration of sentence," id. at 392, held that retroactive application of changes in the parole laws that adversely impacted the likelihood of parole violated the ex post facto clause.

The Third Circuit has since clarified its holding in Mickens-Thomas, explaining that an inmate must show more than application of the 1996 amended statute in considering whether to parole an inmate whose crime preceded the amendment to the statute.  Specifically, the inmate must show actual disadvantage by the retroactive application of the changed law.  Richardson v. Pennsylvania Bd. of Probation and Parole, 423 F.3d 282, 287-88 (3d Cir. 2005).  "To violate the Ex Post Facto Clause, a retroactive change in the law or policy must create a 'sufficient risk of increasing the measure of punishment attached to the covered crimes'; 'a speculative and attenuated possibility of . . . increasing the measure of punishment' is not enough."  Id. at 288.[11] The Third Circuit has "expressly rejected the contention that the retroactive application of the 1996 amendments is a per se violation of the Ex Post Facto Clause entitling the petitioner to automatic relief."  Taylor v. Pennsylvania Bd. of Probation and Parole, 181 Fed. Appx. 253, 254 (3d Cir. 2006).

---

[11] Richardson was decided after the briefing in this matter was completed, and its impact was thus not addressed by the parties.

In <u>Taylor</u>, the Third Circuit held that an <u>ex post facto</u> violation was not shown merely by the fact that the PBPP had referred to the amended statute, explaining:

> The mere intuition that stricter standards are more likely to lead to an adverse result is insufficient.  Rather, Taylor must provide such evidence as indications that he would have been a good candidate for parole under the old law, comparisons of parole rates for prisoners with similar convictions before and after the 1996 amendments, and the extent to which the reasons given for denying him parole would not have been considered before 1996.

<u>Id.</u> at 254-55.

In <u>Shaffer v. Meyers,</u> 163 Fed. Appx. 111 (3d Cir. 2006), the Third Circuit applied its holding in <u>Richardson</u> in a context very similar to that presented here.  The petitioner had been convicted of a sexual assault in 1990.  In denying him release on parole in 2004, the PBPP cited his failure to complete a sex offender program and the lack of a favorable recommendation from corrections officials.  In affirming the rejection of the <u>ex post facto</u> claim, our Court of Appeals explained:

> With regard to the Ex Post Facto Clause, we emphasize that there are two prongs to a successful claim: Shaffer must show not only that there has been a change in law or policy which has been given retrospective effect but also that its retrospective application to him created a real risk of increasing the measure of his punishment. Richardson v. Pennsylvania Board of Prob. and Parole, 423 F.3d 282, 288 (3d Cir. 2005).
>
> In setting forth his claim, Shaffer reads <u>Mickens-Thomas</u> too broadly, at times appearing to interpret that decision as holding that any retroactive application of the amended parole statute violates the Ex Post Facto Clause. However, Mickens-Thomas prevailed because he clearly satisfied both prongs. In his case,

the Board had relied solely on public safety in denying parole and disregarded the parole guidelines, the unanimous recommendations of the Department of Corrections, and evidence of his rehabilitation. Moreover, Mickens-Thomas had presented convincing evidence that he had a significant likelihood of parole under the pre-1996 guidelines and had shown that all prisoner's in his situation (prisoners whose life sentences had been commuted before 1996) had been subsequently paroled. As we noted in Richardson, 423 F.3d at 293, "Mickens-Thomas may be an exceptional case because of the compelling nature of the evidence of prejudice."

Although we do not require a petitioner to provide evidence which is compelling to the same degree, "our precedents require that a petitioner proffer at least some evidence of disadvantage to warrant habeas relief." Id. Shaffer has not done so. Indeed, it is not even clear that he has met the first prong of the analysis, i.e., shown that the Board used new standards, retroactively applied, in denying him parole. Prima facie it does not seem likely that the criteria cited by the Board in Shaffer's case – participation in a treatment program for sex offenders, the recommendation of the Department of Corrections, Shaffer's conduct record and whether he completed any prescribed programs – would not have been considered by the Board pre-amendment, and Shaffer cites no evidence to persuade us otherwise. But even if we assume that the Board would have used different criteria pre-amendment, Shaffer has not provided adequate reasons to support the contention that application of those criteria would likely have resulted in his release on parole.

Id. at 113-14.

In Burkholder's case, the PBPP stated that it was denying parole based upon his written version of the criminal conduct, the DOC recommendation, assessments of his condition and behavior, and his need to participate in and complete institutional programs.  (Dkt. Entry 42-3, Ex. E, Board Decision of April 7, 2004.)  As in Shaffer, the factors cited by the PBPP would

20

appear to have been applicable at the time of Burkholder's criminal conduct, thus undermining any ex post facto claim.[12]  In any event, as in Shaffer, Burkholder has not presented evidence supporting an inference that he has been disadvantaged in some way by consideration of the 1996 amendments to Pennsylvania's parole law.  He has not shown that he was a good candidate for parole under criteria in effect before 1996.  He has made no statistical showing that inmates convicted of violent sexual assaults of young girls to whom they were related were more likely to be paroled before the 1996 change to the legislation.  Because no suggestion of "individual disadvantage" has been presented in this case, Burkholder is not entitled to relief on the ex post facto claim.  See McCole v. Pennsylvania Bd. of Probation and Parole, Civil Action No. 04-261, 2006 WL 2792212, at *3-4 (W.D. Pa. Sept. 26, 2006); Meehan v. Pennsylvania Bd. of Probation and Parole, Civil Action No. 04-495, 2006 WL 2086000, at *2-3 (M.D. Pa. July 25, 2006); Tyler v. Gillis, Civil Action No. 1:04-CV-2345, 2006 WL 2038398, *5-8  (M.D. Pa. July 19, 2006).

---

[12] The record is replete with evidence that consideration of the pre-1996 factors, such as the seriousness of the offense (anal, oral and vaginal intercourse on several occasions with his thirteen-year-old step-daughter, once or more at knife-point, with the ultimate impregnation of the victim), the length of the sentence (above the guideline range), Petitioner's institutional program adjustment (non-participation in sex offenders program), the unlikelihood of rehabilitation (see Dkt. Entry 57-1, Sentencing Transcript, at 37), and Petitioner's personality characteristics ("diagnosed as an opposite sex pedophilia"; id.), would weigh heavily against the grant of parole.

## IV.    CONCLUSION

For the reasons set forth above, Burkholder is not entitled to habeas corpus relief.

Moreover, it is evident that none of his claims merits a certificate of appealability.  An

appropriate Order follows.


**s/ Thomas I. Vanaskie**
Thomas I. Vanaskie
United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **WILLIAM M. BURKHOLDER,** | : | |
| | : | |
| **Petitioner,** | : | **CIVIL NO. 3:CV-03-0007** |
| | : | |
| **v.** | : | **(Judge Vanaskie)** |
| | : | |
| **WILLIAM M. WOLFE,** *et al.,* | : | |
| | : | |
| **Respondents.** | : | |

**O R D E R**

**NOW**, **THIS 9th DAY OF JANUARY, 2007,** in accordance with the foregoing

Memorandum, **IT IS HEREBY ORDERED THAT**:

1)  The petition for writ of habeas corpus is **DENIED**.

2)  The Clerk of Court is directed to close this case.

3)  There is no basis for the issuance of a certificate of appealability.

**s/ Thomas I. Vanaskie**
Thomas I. Vanaskie
United States District Judge
